**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Colson, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>vs.<br><br>Avnet, Inc.,<br><br>               Defendant. | No. 09-603-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court is Plaintiff Michelle Colson's Motion for Collective Action Notification, (Dkt.#18), as well as Defendant Avnet, Inc.'s Motion to Dismiss the First Amended Complaint, (Dkt.#83). After reviewing the relevant pleadings and conducting oral argument, the Court issues the following Order.

**I.      BACKGROUND**

This is a class action lawsuit filed by Michelle Colson, on behalf of herself and all others similarly situated, under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., and two state wage laws—Ariz. Rev. Stat. § 23-350, et seq., and Or. Rev. Stat. § 653.051, et seq..

Defendant Avnet, Inc. is a Phoenix, Arizona-based industrial distributor of electronic components, computer and storage products and embedded subsystems. Avnet currently has

more than 40 offices nationwide, and more than 470 Sales and Marketing Representatives ("SMRs") dispersed across those various offices. Plaintiff was for some undefined period of time employed by Defendant as a SMR in its Oregon office. Plaintiff alleges that she and all other SMRs—as well as those "who perform . . . substantially the same duties as SMR employees"—were misclassified as exempt "administrative" employees under the FLSA. Due to this alleged mischaracterization, Plaintiff contends that she and other Avnet employees were improperly denied overtime wages for their work in excess of 40 hours per week.

A brief history of the procedural posture of this action is required. Plaintiff filed suit against Defendant on March 25, 2009. On April 9, 2009, this Court signed a stipulation that permitted Defendant to Answer by June 1, 2009. Before Defendant had the opportunity to Answer and/or file a Motion pursuant to Rule 12 of the Federal Rules of Civil Procedure, Plaintiff moved the Court for Collective Action Notification under 29 U.S.C. § 216(b) of the FLSA. On June 1, 2009, Defendant moved the Court to stay the proceedings pending the resolution of two cases pending before the Ninth Circuit Court of Appeals. At the same time, Defendant filed a Motion to Dismiss under Rule 12(b)(6) and Strike the Class Allegations pursuant to Rule 12(f). On July 6, 2009, Plaintiff lodged an Amended Complaint. On July 14, 2009, this Court issued an Order which noted that Plaintiff's Amended Complaint mooted Defendant's pending Motion to Dismiss. On July 17, 2009, within a reply brief, Plaintiff moved the Court to equitably toll the statute of limitations on her FLSA claim. On July 23, 2009, Defendant filed a Renewed 12(b)(6) and 12(f) Motion. On November 17, 2009, Plaintiff filed a Motion to Conduct Discovery. On November 18, 2009, this Court conducted a Status Hearing, at which time Plaintiff's Motion to Conduct Discovery was denied as untimely since the Court had not yet ruled on Defendant's Motion to Dismiss or conducted a Rule 16 Scheduling Conference.

On December 3, 2009, this Court conducted oral argument on all pending Motions. The Court denied from the bench Plaintiff's Motion to Equitably Toll the Statute of Limitations, (Dkt.#81), and Defendant's Motion to Stay the Proceedings, (Dkt.#22).

## II.   DEFENDANT'S MOTION TO DISMISS

### A. Legal Standard for a Motion to Dismiss

To survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b))6), the plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Compare Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998) ("[A]ll well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party.") with Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) ("[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

However, "[a] dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief." Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).  Also, in evaluating a motion to dismiss, a district court need not limit itself to the allegations in the complaint; but may take into account any "facts that are [ ] alleged on the face of the complaint [and] contained in documents attached to the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

/ / /

**B. Legal Standard under the FLSA**

The FLSA provides that a covered employer shall not employ any employee "for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA provides a remedy for employees who have not been paid overtime compensation, and states that an employer who violates § 207 "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). At the same time, the FLSA provides a number of exemptions from these overtime regulations for certain employees, including "executive employees," 29 C.F.R. § 541.100, "administrative employees," § 541.200, "professional employees," § 541.300, "computer employees, § 541.400, and "outside sales employees," § 541.500, as well as "combination exemptions," for employees who "perform a combination of exempt duties" but might not directly qualify under any specific exemption. See id. at § 541.708. Here, Plaintiff contends that she and other Avnet employees who worked as SMRs or performed work comparable to a SMR were not eligible to be exempted from FLSA overtime pay requirement under the "administrative employees" exemption.

**C. Oregon and Arizona State Law Claims**

Arizona Revised Statutes § 23-351 provides that: "a) each employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees . . . c) each employer shall, on each of the regular paydays, pay to each of his employees . . . all wages due the employee up to such date. . . ." A.R.S.. § 23-351(3) provides that: "overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period." According to the allegations contained in the First Amended Complaint, by failing to comply with the overtime wage requirements set forth under the FLSA, Defendant similarly violated A.R.S. § 23-351 by failing to pay FLSA mandated overtime within the time periods specified in § 23-351.

Oregon Revised Statutes § 653.055 provides that: "[a]ny employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected." O.R.S. § 653.261 provides in relevant part:

> The Commissioner of the Bureau of Labor and Industries may adopt rules prescribing such minimum conditions of employment, excluding minimum wages, in any occupation as may be necessary for the preservation of the health of employees. The rules may include, but are not limited to…hours of work, but not less than eight hours per day or 40 hours per week; however, after 40 hours of work in one week overtime may be paid, but in no case at a rate higher than one and one-half times the regular rate of pay of the employees when computed without benefit of commissions, overrides, spiffs and similar benefits.

In O.A.R. § 839-020-0030, the Commissioner adopted the following rule,

> all work performed in excess of forty (40) hours per week must be paid for at the rate of not less than one and one-half times the regular rate of pay when computed without benefits of commissions, overrides, spiffs, bonuses, tips or similar benefits pursuant to ORS 653.261(1). Similar benefits include, but are not limited to, discretionary bonuses, gifts, profit sharing, thrift and savings program, trusts, reimbursements for expenses, holiday, or vacation pay.

Accordingly, Plaintiff alleges that Defendant violated Or. Rev. Stat. § 653.055 by failing to pay wages and overtime for work in excess of forty hours per week. To support her Oregon state law claim, Plaintiff seeks to certify an additional sub-class of employees under Rule 23 of the Federal Rules of Civil Procedure. This sub-class, consists of "[a]ll members of the Class employed by Defendant in the State of Oregon who worked in excess of forty hours during one of more workweeks without receiving overtime compensation within two (2) years of the date this action was commenced."

**D. Analysis**

**1. Whether Plaintiff Failed To Plead Sufficient Facts To Make Her Overtime Claims Plausible**[1]

---

[1]Defendant also proffered an argument that Plaintiff did not plead facts sufficient to show that she is "similarly situated" to the members of her proposed FLSA opt-in class under 29 U.S.C. § 216(b). In the interests of judicial economy, however, the Court finds that this type of argument is more appropriate for resolution in a Motion for Collective Action Notification, rather than a Motion to Dismiss relying on Twombly and Iqbal.

Defendant argues that Plaintiff has failed to plead facts sufficient to render her FLSA claim as "plausible" within the meaning of Twomby and Iqbal. See Iqbal, 129 S.Ct. at 1949 ("complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.") (internal citations omitted). Defendant contends that because almost all of Plaintiff's allegations regarding her job duties consist of legal conclusions copied straight from the relevant FLSA regulations without reference to any unlawful actions on the part of Defendant or its agents, Plaintiff's First Amended Complaint does not support a plausible claim for relief that she was misclassified as an exempt employee under the FLSA. Defendant also notes that apart from "parroting back" pertinent language from the FLSA and its accompanying regulations, Plaintiff's only other allegation regarding her work is a "partial" list of job duties, which includes certain "sales" functions, "quoting [of information]," "creating . . . purchase orders," "communicating with customers," and "attending [] meetings." Defendant suggests that providing a vague laundry list of job duties fails to satisfy Iqbal's plausibility requirement, since such a list does not support Plaintiff's claim that she or other employees were ever misclassified. Defendant contends that each of Plaintiff's listed job duties are equally consistent with either exempt or non-exempt status under the FLSA.

- **Meetings**: Defendant argues that the fact that Plaintiff attended "meetings" fails to indicate non-exempt status, because both exempt and non-exempt employees can attend sales meetings. See, e.g., Reich v. John Alden Life Ins. Corp., 126 F.3d 1, 4 (1st Cir. 1997) (exempt employees attended "sales meetings").

- **Communication With Customers**: According to Defendant, the regulations at issue permit an employer to define "advising the customer," and using communications with customers to "market[], servic[e] or promot[e] the employer's . . . products," as exempt work. See 29 C.F.R § 541.203(b); see also 29 C.F.R. § 541.203(a).

- **Preparing Quotes**: According to Defendant, this specific job duty actually suggests that Plaintiff was engaged in exempt work. See Schwind v. EW & Assocs., Inc., 357 F. Supp. 2d 691, 694 (S.D.N.Y. 2005) (duties of exempt "salesperson" included

preparing "sales proposals and contracts"); <u>Reyes v. Hollywood Network, Inc.</u>, 360 F. Supp. 2d 1288, 1291 (S.D. Fla. 2005) (duties of exempt employee included preparation of "bids" for customers); 29 C.F.R. § 541.203(a) ("negotiating" constitutes exempt work); Wilshin v. Allstate Ins. Co., 212 F. Supp. 2d 1360, 1379-80 (M.D.Ga. 2002) (duties of exempt employee included providing quotes to customers).

• **Creating Purchase Orders**: This job, according to Defendant, also could point towards either exempt or nonexempt status, because an individual who prepares purchase orders and has "authority to bind the company on significant purchases generally meet[s] the duties requirements for the administrative exemption. . . ." 29 C.F.R. § 541.203(f).

Defendant further notes that Plaintiff's repeated reference to the term "sales" in her First Amended Complaint does not amount to "a factual allegation stated with any specificity" such that Plaintiff can be said to have met the heightened pleading requirement of <u>Twombly</u> and <u>Iqbal</u>. <u>See Iqbal,</u>129 S.Ct. at 1949. According to Defendant, nothing in the law states that an employee who is engaged in sales type activity cannot qualify for the administrative exemption. <u>See, e.g.</u>, <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 13-14 (1st Cir. 1997) (marketing representatives exempt); <u>Wilshin v. Allstate Insurance Co.</u>, 212 F. Supp. 2d 1360, 1379-80 (M.D. Ga. 2002) (administrative exemption applied where plaintiff "interacted with clients in order to provide quotes and product information . . . [and] during the sales process he determined the products and coverages that he would recommend and emphasize to customers").

Lastly, Defendant alleges that in a case like this, a large putative class action, a plaintiff should not be permitted to file a bare bones complaint and then leverage "the threat of discovery expense" to extract settlements from defendants based on insubstantial and "anemic" allegations such as the ones pleaded here. <u>See Twombly</u>, 550 U.S. at 559.

Plaintiff responded to Defendant's claims by pointing to the First Amended Complaint and noting that it makes specific factual allegations about Plaintiff's employment, including allegations that during her employment Plaintiff regularly performed non-exempt inside sales

work. Plaintiff also alleges that her First Amended Complaint sets forth a complete description of her primary job duties, including the fact that Plaintiff produced sales of electronic component, computer and storage products and embedded subsystems to existing Avnet customers. Plaintiff further alleges that like other SMRs, her compensation depended upon selling the highest number of products at the highest possible markup. Plaintiff also claims that she alleged with specificity that she rarely exercised discretion and were consistently subject to supervision and oversight in the performance of their job duties. Plaintiff points to allegations that she along with other SMR employees routinely worked more than 40 hours per week without receiving overtime compensation. According to Plaintiff, neither <u>Twombly</u> nor <u>Iqbal</u> impose a heightened pleading standard requiring "detailed factual allegations" in excess of what Plaintiff in this case has already pled, and that her allegations are more than sufficient to withstand Defendant's dismissal motion. <u>Uribe v. Mainland Nursery, Inc.</u>, 2007 U.S. Dist. LEXIS 90984, *6-8 (E.D. Cal. Dec. 11, 2007) (FLSA claim satisfied <u>Twombly</u> where plaintiffs alleged that defendant failed to compensate them at the appropriate rate for hours worked in excess of 40 hours per week and alleged that plaintiffs were non-exempt employees).

The Court must ultimately agree with Plaintiff, but notes that the issue is somewhat close, and that her claim survives judicial scrutiny under <u>Iqbal</u> by the thinnest of threads. Despite the presence what can only be referred to as scant factual allegations, the Court is nevertheless satisfied that Plaintiff has carried her burden at this most preliminary stage of the lawsuit, and that Plaintiff has stated a plausible claim for relief under the FLSA and by extension, under Oregon and Arizona's wage laws. To the extent Defendant is asking the Court to perform a more searching review of Plaintiff's factual allegations than what is normally performed at a motion to dismiss, the Court finds that such a review is more appropriate for resolution of Plaintiff's Motion for Collective Action Notification—or perhaps, if required, a motion for summary judgment.

**2. Whether Plaintiff Failed To Plead Sufficient Facts That Avnet Acted "Willfully"**

Defendant next argues that Plaintiff failed to plausibly allege that Avnet acted "willfully," so as to extend the statute of limitations under the FLSA from two to three years. See 29 U.S.C. § 255(a). Defendant notes that in Iqbal, the Supreme Court specifically held that conclusory allegations of willfulness are insufficient, Iqbal, 129 S.Ct. at 1954, yet here, Plaintiff has simply stated without elaboration that Defendant "intentionally, willfully, and repeatedly" violated the FLSA.

In her response brief, Plaintiff did not rebut Defendant's charge that she failed to allege any specific facts supporting a wilfulness determination. Instead, Plaintiff appears to rest on the allegations in her Complaint which states nothing more than that "Defendant has not made a good faith effort to comply with the FLSA . . .." Accordingly, the Court must conclude that under even the most narrow and restrictive reading of Twombly and Iqbal, Plaintiff has failed to state a plausible claim that Defendant acted with a mental state reflecting wilfulness.

### 3. Whether Plaintiff Lacks Standing To Pursue Injunctive Relief

The Court must next hold that Plaintiff's request for injunctive relief fails, because "the right to bring an action for injunctive relief under the [FLSA] rests exclusively with the United States Secretary of Labor," and not with private plaintiffs. Powell v. Florida, 132 F.3d 677, 678 (11th Cir. 1998); 29 U.S.C. §§ 211, 216(b). Moreover Plaintiff, as a former employee, lacks standing to seek an injunction on behalf of current employees. City of Los Angeles v. Lyons, 461 U.S. 95, 104-05 (1983); Lanzarone v. Guardsmark Holdings, Inc., 2006 WL 4393465, at *3 (C.D. Cal. Sept. 7, 2006).

### 4. Whether the Arizona State Law Claim Should be Dismissed As Being Extraterritorial

Defendant contends that as an Oregon citizen who worked in Defendant's Oregon office, Plaintiff cannot satisfy the Arizona Wage Act's definition of an "employee" – i.e., a person who "performs services for an employer under a contract of employment either": (1) made in this state" or (2) "to be performed wholly or partly within this state." A.R.S. § 23-350. In addition, Defendant argues that Plaintiff cannot legitimately contend that she

"performed [her contract] wholly or partially" in Arizona, A.R.S. § 23-350, because she worked exclusively in Oregon. As such, Defendant urges the Court to reject Plaintiff's attempt to apply the Arizona Wage Act extraterritorially to herself and a nationwide class of SMRs, most of whom have never worked or spent any significant time in this State. See Desert Wide Cabling & Installation, Inc. v. Wells Fargo & Co., 191 Ariz. 516, 517 (1998) ("Statutory enactments are presumed to be confined to operation within the state in the absence of an express statement to the contrary.")

The Court agrees with Defendant. First, it is unclear how this Court could properly conclude that Plaintiff's employment contract with Defendant was in any sense "made" in Arizona, particularly when the undisputed facts contained in the First Amended Complaint reveal that Plaintiff's employment contract was accepted, signed, and mailed from Oregon. Under Arizona law, a contract is "made" where "the last act necessary for its formation is done." Ryan v. Indust. Comm'n of Arizona, 127 Ariz. 607, 609 (Ct. App. 1981). Because the "last act" necessary to secure Plaintiff's employment was Plaintiff mailing back an "offer letter" to Defendant from Oregon, her contract was "made in" Oregon rather than Arizona. Similarly, nothing in the Complaint suggests that the employment contract between Ms. Colson and Avnet was intended to be performed within the territorial boundaries of the State of Arizona, or that any part of the contract was in fact performed in Arizona. It should be noted that Plaintiff's only allegation that she ever set foot in Arizona for work purposes is her claim that she once spent five days within the first month of her employment to attend a "training" event at Defendant's corporate headquarters.

Finally, in her response in opposition to Defendant's dismissal motion, Plaintiff requested that the Court provide her with the opportunity to amend her Complaint to clarify any factual or class allegations instead of dismissing either the case or any of her claims. See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1035 (9th Cir. 2008). Along similar lines, during the November 18, 2009 Status Hearing, Plaintiff reiterated her request that the Court grant leave to amend rather than dismissing her Arizona claims. Plaintiff's request included the ability to add or subtract a named plaintiff, if so required. As noted in

the preceding paragraphs of this Order, Ms. Colson, the named Plaintiff, cannot state a claim for relief under A.R.S. § 23-350, and the Court will not exercise its discretion to permit Plaintiff to amend her Complaint to add an additional named party to this lawsuit who might have a less tenuous connection to the State of Arizona than does Ms. Colson. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (noting that "futility," "undue delay," and "prejudice to the non-moving party" are sufficient grounds for denying a motion for leave to amend).

### 5. Whether Plaintiff's State Law Claims Are Preempted By The FLSA

Defendant contends that the FLSA preempts Plaintiff's (now dismissed) Arizona and Oregon state law claims under a conflict preemption theory. See Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-00 (1988) (noting that state laws are preempted "where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress").

Defendant argues that Plaintiff's Arizona and Oregon causes of action "rise and fall" with her federal claim, as both state law claims are wholly dependant upon the success of Plaintiff's FLSA claim. Because "the FLSA is the exclusive remedy for enforcement of rights created under the FLSA," and that "a Plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state claims in addition to the FLSA claim," Defendant contends that Plaintiff's Arizona and Oregon state law claims interfere with the accomplishment of the purposes and objections of Congress and are therefore preempted. See Roman v. Maietta Constr., Inc., 147 F.3d 71, 76 (1st Cir. 1998). To this end, Defendant cites to a recent decision issued by Judge Susan R. Bolton of the District of Arizona in the case Wood v. TriVita, Inc. et al., CV-08-0765-PHX-SRB, which dealt with issues remarkably similar to the ones presented here. In TriVita, the district court was asked to consider whether Arizona's wage law, A.R.S. § 23-351, et seq., was preempted by the FLSA, in light of the Ninth Circuit's pronouncement in Williamson v. General Dynamics Corp., 208 F.3d 1144, 1154 (9th Cir. 2000), that "claims that are directly covered by the FLSA (such as

overtime and retaliation disputes) must be brought under the FLSA." TriVita, Inc., 2008 U.S. Dist. LEXIS 109368 , at *8-9.

With respect to Plaintiff's claim under Arizona's wage law, Judge Bolton's reasoning is compelling and directly on-point, specifically:

> A.R.S. § 23-355 allows an employee to recover treble damages for an employer's failure to pay wages due, and is more generous than the remedy provided by the FLSA for the failure to pay overtime. Decisions from this court have disagreed over whether a plaintiff may recover treble damages under § 23-355 for overtime pay allegedly due under the FLSA. Aragon v. Bravo Harvesting, Inc., 1 Wage & Hour Cas. 2d (BNA) 982, 1993 WL 432402, at *6 (D. Ariz. May 12, 1993) ("Plaintiff may not seek treble damages for its FLSA claims."); but see Spieth v. Adasen Distrib., Inc., 1989 WL 61187 (D. Ariz. Jan. 24, 1989) (concluding that the FLSA does not preempt state law claim for unpaid overtime under § 23-355). Unlike here, the plaintiff in Spieth did not bring suit under the FLSA. The Aragon court explained that a plaintiff cannot recover the remedy provided in § 23-355 for a violation of the FLSA because the language of § 23-355 "limits its application to violations of Chapter 2 of title 23 of the Arizona Revised Statutes which governs 'Employment Practices and Working conditions." 1 Wage & Hour Cas. 2d (BNA) 982, 1993 WL 432402 at *2 (citing Marshall v. Bernat Enters., Inc., 1978 U.S. Dist. LEXIS 14572, 1978 WL 1761 (D. Ariz. Nov. 2, 1978)). The court also noted that § 23-352(3) "removes the remedy of treble damages when a good faith dispute regarding the amount of wages exists." Id. (citing Abrams v. Horizon Corp., 137 Ariz. 73, 669 P.2d 51, 55 (Ariz. 1983)). Plaintiff's Count Two for violation of §§ 23-351 and 23-353 amounts to nothing more than a claim for overtime due under the FLSA. In sum, she alleges that she was not paid overtime allegedly due under the FLSA, and then alleges that it was also late under §§ 23-351 and 23-353. **To allow Plaintiff to bring suit for a violation of the FLSA and seek a remedy other than that provided by the FLSA would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the FLSA**. Although the FLSA's "savings clause" allows states to raise the minimum wage or set a lower maximum work week, overtime claims that are directly covered by the FLSA must be brought under the FLSA. 29 U.S.C. § 218(a) . . ..

Id. (emphasis added).

While the Trivita matter did not concern a claim brought under O.R.S. § 653.055, the Court sees no reason why the Judge Bolton's reasoning in Trivita should not also control the fate of Plaintiff's Oregon claim, which essentially seeks to piggy-back thirty days' wages worth of waiting-time penalties onto any alleged FLSA violation. See Id. at § 652.150. As such, because the Court is not convinced that Judge Bolton's Trivita decision was wrongly decided or that its underlying facts are in any way distinguishable from those of the instant case, or that utilizing Trivita's analytical framework is not appropriate in the context of

O.R.S. § 653.055, the Court will follow Judge Bolton's persuasive opinion and dismiss Plaintiff's Oregon state claim.[2]

### E. Conclusion

In sum, Defendant's Motion to Dismiss is granted in part and denied in part. Defendant's motion to dismiss Plaintiff's FLSA claim on the grounds that it does not comply with the pleading requirements set forth in <u>Twombly</u> and <u>Iqbal</u> is denied, while Defendant's motion to dismiss the allegation that Defendant acted "willfully" is granted. Defendant's motion to dismiss Plaintiff's Arizona state law claim as extraterritorial is similarly granted, as is Defendant's motion to dismiss Plaintiff's request for injunctive relief. Lastly, the Court grants Defendant's motion to dismiss Plaintiff's remaining Oregon state law claim—and in the alternative, her Arizona state law claim—as preempted by federal law.

## II. PLAINTIFF'S MOTION FOR COLLECTIVE ACTION NOTIFICATION

### A. Legal Standard

A party may bring a collective action under the FLSA on behalf of other "similarly situated" employees. <u>See</u> 29 U.S.C. § 216(b); <u>Hoffman-LA Roche v. Sperling</u>, 493 U.S. 165, 168-69 (1989); <u>Hutton v. Bank of America</u>, 2007 WL 5307976, *1 (D. Ariz. Mar. 31, 2007) (slip opinion). "The district court has discretion to determine whether a collective action is appropriate." <u>Romero v. Producers Dairy Foods, Inc.</u>, 235 F.R.D. 474, 481 (E.D. Cal. 2006) (citing <u>Leuthold v. Destination Am., Inc.</u>, 224 F.R.D. 462, 466 (N.D. Cal. 2004)). Under 29 U.S.C. § 216(b), an employee cannot be a plaintiff "unless he gives his consent in writing to become such a party and such consent is filed in the court."

The issue before the Court is whether Plaintiff and her proposed class members are "similarly situated" within the meaning of § 216(b). Section 216(b) does not define "similarly situated," and the Ninth Circuit has not construed the term. Federal district courts have taken at least three approaches to determining whether plaintiffs are "similarly situated"

---

[2]Plaintiff's Arizona state law claim is similarly dismissed under the <u>Trivita</u> decision, in the alternative.

for purposes of § 216(b): "(1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions." Id. (citing Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)).  However, district courts within the Ninth Circuit generally follow the two-tiered or two-step approach for making a collective action determination. See Hoffman-LA Roche, 493 U.S. at 168-69; Hutton, 2007 WL 5307976, at *1 (internal citations omitted).

Under the two-step approach, the court determines, "on an ad hoc case-by-case basis, whether plaintiffs are similarly situated." Thiessen, 267 F.3d at 1102 (citing Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213 (5th Cir. 1995) (overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003))).  This requires the court to first make "an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" Id. (citing Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997)). At this first stage, the court "'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" Id. (quoting Vaszlavik, 175 F.R.D at 678)). If a plaintiff can survive this hurdle, the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit potential class members to opt-into the lawsuit. Once the notification period ends, the Court moves on to the second step of the certification process. At the second step, in response to a motion to decertify the class filed by a defendant, the court makes yet another determination whether the proposed class members are similarly situated; this time, however, the court utilizes a much stricter standard to scrutinize the nature of the claims. Id. at 1102-03.

While conditional certification at the first stage is by no means automatic, see Adams v. School Board of Hanover County, 2008 WL 5070454 (E.D. Va. Nov. 26, 2008), Plaintiffs' burden is light. "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies

underlying the FLSA." <u>Wertheim v. State of Arizona</u>, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993); <u>In re Wells Fargo Home Mortgage Overtime Pay Litig</u>., WL 3045994, at *14 (N.D. Cal. Oct. 18, 2007). Given the light burden, motions to conditionally certify a class for notification purposes are "typically" granted. <u>See Lemus v. Burnham Painting & Drywall Corp.</u>, 2007 WL 1875539, at *3 (D. Nev. June 25, 2007) ("the court usually relies on the pleadings and any affidavits submitted, and applies a lenient standard which typically results in 'conditional certification' of a representative class"). To proceed to the notification stage of the litigation, Plaintiffs' allegations need neither be "strong [n]or conclusive." <u>Rehwaldt v. Elec. Data Sys. Corp.</u>, 1996 WL 947568, at *4 (W.D.N.Y. March 28, 1996). The evidence must only show that there is some "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." <u>Bonila v. Las Vegas Cigar Co.</u>, 61 F. Supp. 2d 1129, 1138 n.6 (D.Nev. 1999). Courts recognize that collective action notification normally occurs before the Parties have had the chance to engage in extensive fact discovery. <u>See Delgado v. Ortho-McNeil, Inc.</u>, 2007 WL 2847238 (C.D. Cal. Aug. 7, 2007) (citing <u>Edwards v. City of Long Beach</u>, 467 F.Supp.2d 986, 990 (C.D. Cal. 2006) ("Given the limited amount of evidence generally available at this stage, the court will generally apply a fairly lenient standard.")). That is why in making a determination in whether to conditionally certify a proposed class for notification purposes only, courts do not review the underlying merits of the action. <u>See Williams v. Trendwest Resorts, Inc.</u>, 2006 WL 3690686, at *3-4 (citing <u>Frank v. Capital Cities Comm., Inc.</u>, 88 F.R.D. 674, 676 (S.D.N.Y. 1981). "It is not the Court's role to resolve factual disputes…or…decide substantive issues going to the ultimate merits…at the preliminary certification stage of an FLSA collective action." <u>Barrus v. Dick's Sporting Goods, Inc.</u>, 456 F. Supp. 2d 224, 230 (W.D.N.Y. 2006) (internal citations omitted). <u>See also, e.g., Stanfield v. First NLC Fin. Servs., LLC</u>, 2006 WL 3190527, at *4 (N.D.Cal. Nov. 1, 2006) ("the Court will not evaluate the merits of Plaintiffs' claims under the FLSA at this point in the litigation").

/ / /

## B. Analysis

Plaintiff Michelle Colson has moved this Court to conditionally certify a class consisting of all current and former SMRs employed by Defendant Avnet, Inc., along with "all other persons employed by Defendant in the United States who perform or performed substantially the same duties as SMR employees and who work or worked in excess of forty hours during one or more work weeks without receiving overtime compensation within three (3) years of the date this action was commenced." Along with the factual allegations contained in the First Amended Complaint, Plaintiff has submitted declarations from Joel W. Christiansen, an attorney for Plaintiff, David Gardepie, a former Avnet employee who worked for Defendant from September 11, 2006 until May 27, 2009, as well as a declaration from Michelle Colson, the sole named Plaintiff. Also submitted by Plaintiff is a copy of correspondence between Mr. Christiansen and an in-house attorney working for Defendant, and a copy of a job description for an SMR position from Defendant's website, avnet.com.

Not surprisingly, Defendant has opposed the Motion for Collective Notification and has submitted declarations from many of its own employees, including Carol Ann Gorden, Director of Marketing Programs, Liza Polin, Human Resource Manager in the Western Region, Brian Jones, SMR in New Jersey, Rebecca Handley, Sales and Marketing Director in Texas, Ken MacMillan, SMR in Colorado, David Kane, SMR in Florida prior to April 2007 and Sales and Marketing Manager ("SMM") through the present, Kyle Duxstad, SMR employee in Texas, Rikki Rossi, SMM in California and Oregon, Bryan McCandless, SMR employee prior to October 2006 and a SMM through the present, Frank Garza, SMR employee in Arizona, Kenny Peters, SMR employee in Colorado, Colleen Legere, a SMR in Massachusetts, Rina Foster, SMR in Illinois, Jeremiah Bell, SMR in Colorado, Cara Stewart, SMR in Oregon, and Denise Csubak, SMR in California. Defendant also provided the Court with a copy of a Stipulation for Future Compliance and Dismissal that the United

States Department of Labor and Avnet jointly filed in the case of <u>Raymond J. Donovan, Secretary of Labor v. Avnet, Inc.</u>, No. 79-04711 (C.D. Cal. Mar. 16, 1981).[3]

Plaintiff provided the Court with an extremely abbreviated and bare bones Motion for Collective Action. In its opening brief, Plaintiff sets forth only one substantive argument regarding whether she is similarly situated to the proposed class members, while apparently resting on the relatively light burden that FLSA plaintiff's generally carry during the first stage of the certification process. <u>In re Wells Fargo Home Mortgage Overtime Pay Litig.</u>, WL 3045994, at *14. When pared down to its most essential elements, Plaintiff's argument in favor of collective action is that because Defendant classified all of its SMR employees as exempt, and because all SMR employees perform essentially the same tasks nationwide, these elements standing alone justify the Court in conditionally certifying a nationwide class for notification purposes under the FLSA. Plaintiff's approach, however, is problematic for two main reasons. First, mere classification of a group of employees as exempt does not automatically dictate, as a matter of law, whether collective action notification is appropriate. <u>See Vinole v. Countrywide Home Loans, Inc.</u>, 571 F.3d 935, 946 (9th Cir. 2009) ("focusing on a uniform exemption policy alone does little to further the . . . assessment of the relationship between individual and common issues."). Second, Plaintiff's evidentiary showing that SMRs performed the same job duties is plainly insufficient, even under the most liberal legal standard. <u>See</u> <u>Bishop v. Petro-Chem. Transport, LLC</u>, 582 F. Supp. 2d 1290, 1297 (E.D. Cal. 2008) ("While the standard for conditional approval at [this] stage of the litigation is lenient, it does require some evidentiary support. The lack of any evidence of similarity or even other potential class members precludes class certification.").

---

[3]This Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This includes "matters of public record" such as documents filed with a court. <u>United States v. 14.02 Acres</u>, 530 F.3d 883, 894 (9th Cir. 2008) (internal quotation marks omitted). Accordingly, the Court will take judicial notice of the 1981 Stipulation.

As a matter of both sound public policy and basic common sense, the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes. If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality or quantity of evidence that had been produced in the form of declarations and supporting exhibits. Such a rule would run counter to the long established law governing § 216(b) actions, which states that whether an employee has been properly exempted under the FLSA necessitates a fact specific inquiry. See Trinh v. JP Morgan Chase & Co., 2008 U.S. Dist. LEXIS 33016, *13 (S.D. Cal. April 22, 2008) (whether employees "are 'exempt' necessarily involves a fact-by-fact inquiry into the circumstances of each employee to see if he or she falls within an administrative, outside sales, highly compensated, combination, or any other exemption."). Indeed, two recent opinions from the Ninth Circuit on class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure, In re Wells Fargo, 571 F.3d 953 (9th Cir. 2009) and Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935 (9th Cir. 2009), are instructive. In both cases, the Ninth Circuit acknowledged the highly-individualized nature of the types of exemptions at issue here: "[t]he fact that an employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties." See In re Wells Fargo Home Mortgage, 571 F.3d at 959; see also Vinole, 571 F.3d at 947-47(noting that there was "no standard policy governing how employees spend their time" and holding that the outside sales exemption would "require inquiries into how much time each individual . . . spent in or out of the office and how the [employee] performed his or her job. . . ."). While Wells Fargo and Vinole are Rule 23 cases, the Ninth Circuit's reasoning is just as relevant for FLSA opt-in class action, such as this one.

Turning to Plaintiff's evidence, the Court notes that Plaintiff submitted only three declarations along with several exhibits. These documents do not come close to establishing a sufficient evidentiary basis that all SMRs performed similar tasks and were, as a discernable class, potentially misclassified as employees exempt from over-time pay requirements. In FLSA actions, plaintiffs have the burden to demonstrate that they are "similarly situated" to the individuals in their proposed collective-action class by demonstrating "a reasonable basis for [a] claim of classwide FLSA violations." Arriaga-Zacarias v. Lewis Taylor Farms, Inc., 2008 U.S. Dist. LEXIS 98064, at *22 (M.D. Ga. Dec. 4, 2008). To satisfy this burden, plaintiff must provide the court with "detailed allegations supported by [declarations] which successfully engage a defendant's affidavits to the contrary." Hipp v. Nat'l Liberty Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001). Moreover, those affidavits must constitute admissible evidence. See Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005); but see Stickle v. SCI Western Mkt. Support Ctr., L.P., 2009 U.S. Dist. LEXIS 97735, *17 (D. Ariz. Sept. 30, 2009) ("[T]his Court is not convinced that at this stage of the litigation the affidavits submitted in support of a motion for conditional certification pursuant to § 216(b) must meet the precise evidentiary standards set forth in Rule 56(e).").

Plaintiff's first declarant, Michelle Colson, the named Plaintiff, worked only in Defendant's Oregon office and her declaration reveals that she had minimal contact with SMR employees from other states. To the extent Ms. Colson has provided information relating to Defendant's employment practices with SMRs outside the State of Oregon, it is based on nothing more than her opinions, which are vague and appear to be based on unspecified hearsay from unidentified sources. This is readily apparent from Ms. Colson's declaration, which makes reference to "discussions . . . with [unidentified] co-workers," unspecified "company communications," and undocumented "interactions with other SMR employees and Avnet clients." Her allegations also lack specificity with regards to time or place, and her filing is filled with statements that lack personal knowledge. While Ms. Colson's declaration has some value in describing her own experience, it has no probative

value in establishing that she, along with other SMRs across the country, "were together the victims of a single decision, policy, or plan." <u>See</u> <u>Thiessen</u>, 267 F.3d at 1102. Essentially, Ms. Colson's declaration describes the experience of one former Avnet employee in one office who is claiming to have not been paid the overtime wages she was entitled to.

The declaration of Mr. David Gardepie has even less evidentiary value than Ms. Colson's. Mr. Gardepie was never even employed by Defendant as a SMR, but instead worked as a trainee and then administrative assistant for most of his tenure with Defendant. Like Ms. Colson, Mr. Gardepie's declaration states that he observed the performance and job duties of SMRs in only one office in Oregon. Furthermore, as Plaintiff clarified at oral argument, Mr. Gardepie is not even a member of the proposed class.

Plaintiff's final declaration comes from Mr. Joel W. Christiansen, who is Plaintiff's attorney. Mr. Christiansen has no personal experience with Defendant's employment practices or with the job duties of a SMR, and as such, his statements by themselves have no evidentiary value. <u>See</u> <u>Wertheim v. Arizona</u>, 1992 WL 566321, at *3 (D. Ariz. Aug. 4, 1992) (declaration claiming that declarant was "informed" that defendant classified plaintiffs by a common method was "so lacking in foundation that, even if admissible, it deserves no weight whatsoever"). Attached to Mr. Christiansen's declaration are several exhibits. Exhibit C of his declaration purports to be a "fair and accurate printout" of a job description from avnet.com for an SMR position. The posting sets forth various job duties of an Avent SMR. However, as Defendant points out, the text does not include an important passage at the bottom of the page, which reads: "[t]he above statements are intended to describe the general nature and level of work being performed. They are not intended to be construed as an exhaustive list of all responsibilities, duties, and skills." Moreover, the printout notes that the advertisement is for an SMR position in "Nogales, Mexico." Since the proposed class does not include positions outside the United States, the Court will strike Exhibit C of Mr. Christiansen's declaration. Another attachment to Mr. Christiansen's declaration is Exhibit B, which is a response from Defendant's attorney to Plaintiff's initial demand letter. The use of this letter is clearly barred by Rule 408 of the Federal Rules of Evidence, which forbids

the use of statements made during the course of settlement "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction."[4]  The Court will likewise strike Exhibit B to Mr. Christiansen's  declaration.

In sum, Plaintiff's claim that she is similarly situated to all SMRs is insupportable. Although the burden for certifying a FLSA lawsuit for collective action notification is light, there are limits, and the district court cannot function as a rubber stamp for any and all claims that come its way under this statute.  There is no indication that any district court within this Circuit has ever granted conditional certification based on the evidentiary showing that has been made here. See, e.g., Guess v. US Bancorp, 2008 U.S. Dist. LEXIS 18806 *12 (N.D. Cal. Feb. 26, 2008) ("Notably, Plaintiff has failed to offer evidence from any potential class member (other than himself) suggesting that persons . . . he identified are similarly situated.") (denying conditional certification).  As such, this case will move forward in its most proper form, which is a uncomplicated lawsuit by a single employee against her former employer for alleged violations of federal overtime laws stemming from her individual experiences in one office.

**Accordingly,**

**IT IS HEREBY ORDERED** granting in part Defendant Avnet, Inc.'s Motion to Dismiss the First Amended Complaint, (Dkt.#83).

---

[4]Although Plaintiff contends that the use of this counsel-to-counsel settlement letter is being used for the limited purpose of establishing that Plaintiff is "similarly situated" to other proposed class members and not to prove liability, the Court is not persuaded by that argument. Taking a settlement letter and using it to turn what is a single claim by a single Plaintiff into a nationwide class action, is no different than offering evidence for the purpose of expanding "liability" or increasing the "amount" at controversy, both of which are barred by Rule 408.  In addition, permitting FLSA plaintiffs to use confidential settlement communications would directly contravene Rule 408's purpose of encouraging the "free-flowing, informal discussion that is often necessary for effective settlement negotiations." Fed. R. Evid. 408, Commentary

1      **IT IS FURTHER ORDERED** denying Plaintiff Michelle Colson's Motion for

2  Collective Action Notification, (Dkt.#18).

3      **IT IS FURTHER ORDERED** granting the Parties' stipulation setting forth a

4  protocol for the informal exchange of electronically stored information. (Dkt.#111).

5      DATED this 27th day of January, 2010.

Mary H. Murguia
United States District Judge